UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| TIMOTHY FIRESTONE AND LYRIC RICHARDSON, Individually and Behalf all others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> FOOD CONCEPTS, LLC d/b/a Cowboys Brazilian Steakhouse, AND ARMELINDO CONTE *individually*, <br><br> Defendants. | ) ) ) ) ) Civil Action No. 2:22-cv-04020-BHH ) ) **Opinion and Order** ) ) ) ) ) ) ) ) ) |

Plaintiffs Timothy Firestone ("Firestone") and Lyric Richardson ("Richardson") (collectively, "Plaintiffs") bring this Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, lawsuit against Defendants Food Concepts, LLC d/b/a Cowboys Brazilian Steakhouse ("Food Concepts") and Armelindo Conte ("Conte") (collectively, "Defendants"). Plaintiffs filed a second amended complaint on July 28, 2023, individually and on behalf of themselves and other similarly situated current and former employees of Defendants, alleging that Defendants illegally claimed a tipped credit to reduce their hourly wages below federal minimum wage and illegally kept a portion of Plaintiffs' tips in violation of the FLSA. (ECF No. 23 at 7-9 (first and second cause of action).) Richardson also brings an individual claim against Defendants under the FLSA, alleging that Defendants failed

to compensate her for her overtime work. (*Id.* at 9-10 (third cause of action).) The Court has federal-question jurisdiction over Plaintiffs' FLSA claims under 28 U.S.C. § 1331.[1]

Pending before the Court is Plaintiffs' motion for conditional class certification and to authorize notice to potential class members. (ECF No. 18). Plaintiffs seek to represent a class of current and former gauchos and servers who worked at Food Concepts' North Charleston restaurant during the past three years and were denied federal minimum wage by being required to share tips with an owner and manager. (ECF No. 18 at 2.) Plaintiffs' motion is brought pursuant to 29 U.S.C. § 216(b). (*Id.* at 1.)

Defendants oppose Plaintiffs' motion, arguing, first, that the Court should reject the two-step conditional certification process, and second, that, even if the Court utilizes the two-step process, Plaintiffs have not provided sufficient evidence that the putative class is similarly situated. (ECF No. 22.) Defendants also contend that the proposed notice is overbroad. (*Id.*)

In their reply, Plaintiffs contend that the Court should decline Defendants' request to deviate from established precedent. (ECF No. 29.) Plaintiffs argue that they have proffered sufficient evidence of class-wide commonality to meet their burden at the notice stage. (*Id.*) Lastly, as to the proposed notice, Plaintiffs request that the Court order the parties to meet and confer and present the Court with an agreed-upon notice. (*Id.*)

The Court has reviewed the parties' memoranda in support of their respective positions, and for the following reasons, the Court grants Plaintiffs' motion for conditional certification.

---

[1] The Court notes that the second amended complaint states that "this Court has supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over Plaintiff's pendent claims." (ECF No. 23 at ¶ 10). However, the complaint contains three causes of action and each one is brought pursuant to the FLSA only. (*See generally* ECF No. 23.)

2

## BACKGROUND

Food Concepts is a restaurant in North Charleston offering a salad bar with over thirty items, including hot Brazilian dishes as well as prime cuts of beef, lamb, chicken and pork, carved tableside. (ECF No. 23 ¶¶ 11-12.) Firestone worked as a gaucho at the restaurant from October 2021 to October 2022. (*Id.* ¶¶ 16, 18.) Richardson worked as a server and an assistant manager at the restaurant from March 2019 until June 2022. (*Id.* ¶¶ 17, 19, 41.) Conte is the owner and manager of the restaurant – he manages the daily operations, has authority to hire and fire employees, determines employee work schedules, sets the rate of pay, sets the tip pool policy, and has control over the finances and operations of the restaurant. (*Id.* ¶¶ 13-14.)

Plaintiffs and other similarly situated gauchos and servers were compensated pursuant to an employment agreement whereby Defendants paid them $2.13 an hour plus tips. (*Id.* ¶¶ 20-21, 26.) To meet the statutory minimum wage requirement of the FLSA, Defendants applied a "tip credit" equal to the difference in FLSA's statutory minimum wage of $7.23 per hour and the hourly compensation of $2.13 that Plaintiffs received directly from Defendants. (*Id.* ¶ 27.)

However, Plaintiffs and other similarly situated employees were not entitled to take their tips directly from customers. Instead, gauchos and servers were required to participate in a mandatory "tip pool," whereby tips were split equally between gauchos, servers, and Conte at the end of each shift. (*Id.* ¶¶ 28-29.) Thus, Plaintiffs allege that because they were required to share their tips with an owner and manager, Defendants maintained a willful policy of withholding and/or diverting portions of Plaintiffs' and other similarly situated employees' tips directly from them each shift and using the money for

3

their own purposes. (*Id.* ¶¶ 31-35.) Plaintiffs seek compensatory damages in an amount equal to the unpaid minimum wages allegedly owed, liquidated damages, and reasonable attorneys' fees and costs.

Richardson additionally alleges that when she worked as an assistant manager, she was a non-exempt employee and was paid $15.00 an hour. (*Id.* ¶¶ 40-43.) In this capacity, she did not have authority to hire, fire, or discipline employees, nor did she exercise independent discretion. (*Id.* ¶¶ 44-45.) She claims she regularly worked over forty hours almost every week she worked as server and assistant manager and was always paid straight time. (*Id.* ¶¶ 46, 48.) She alleges that she was not paid time and half her regular rate of $2.13 an hour or $15.00 an hour even though she regularly worked 5 to 10 hours of overtime in these weeks. (*Id.* ¶¶ 47, 49.) Richardson seeks back pay and liquidated damages.

## PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION

### A. The FLSA Collective Action Certification Process

Under the FLSA, private plaintiffs may bring a collective action on their own behalf and on behalf of those "similarly situated" to them. 29 U.S.C. § 216(b). According to the statute,

> An action to recover the liability prescribed in [§ 216(b)] may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and on behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

*Id.*

The Supreme Court has highlighted the importance of "employees receiving accurate and timely notice concerning the pendency of [a] collective action, so that they

4

can make informed decisions about whether to participate." *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989). The Court also emphasized that district courts have discretionary authority to facilitate notice to potential plaintiffs. *Id.* at 174. Although neither the Fourth Circuit nor the Supreme Court has prescribed a process for certification, most federal courts follow the two-step approach for FLSA certification as explained in *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. 1987). Under *Lusardi*, district courts undertake a two-step process: (1) the notice stage, also called the conditional class certification stage, and (2) the class decertification stage. *Winks v. Va. Dep't. of Transp.*, 2021 WL 2482680, at *2 (E.D. Va. June 17, 2021) (citation omitted); *Purdham v. Fairfax Cnty. Pub. Schs.*, 629 F. Supp. 2d 544, 547 (E.D. Va. 2009) (citations omitted).

In the first stage, usually initiated pre-discovery and referred to as the "notice stage," the court makes a determination of whether a plaintiff has demonstrated that potential plaintiffs are similarly situated, such that a court-facilitated notice to putative class members would be appropriate. *See Pelczynski v. Orange Lake Country Club, Inc.*, 284 F.R.D. 364, 367-68 (D.S.C. 2012). If the court determines that the potential plaintiffs are "similarly situated," the action is conditionally certified, a court-approved notice is sent to potential opt-in plaintiffs, and the action proceeds as a representative action throughout discovery. *Id.* at 368.

At the second stage of collective certification, a defendant may move to decertify the collective action after discovery, and the court applies a heightened standard to evaluate whether the plaintiffs are similarly situated to the extent that a collective action would be the appropriate vehicle for relief. *See Amoko v. N&C Claims Serv, Inc.*, 577 F. Supp. 3d 408, 413-14 (D.S.C. 2021) (internal citations omitted). If the court finds during

5

this second stage that the plaintiffs are not similarly situated, the court may decertify the class, dismiss the opt-in plaintiffs' claims without prejudice, and permit the named plaintiff(s) to proceed on individual claims. *Id.*

As an initial matter, Defendants argue that the Court should reject the *Lusardi* two-step certification process and, instead, should analyze this case under the more stringent one-step certification standard endorsed by the Fifth Circuit and, more recently, albeit a bit differently, by the Sixth Circuit. *See Swales v. KLLM Transp. Servs., LLC*, 985 F.3d 430, 433-43 (5th Cir. 2021) (holding that district courts "should identify, at the outset of the case, what facts and legal considerations will be material to determining whether a group of 'employees' is 'similarly situated.' And then it should authorize preliminary discovery accordingly"); *Clark v. A & L Homecare & Training Ctr., LLC*, 68 F.4th 1003,1011 (6th Cir. 2023) (holding that "for a district court to facilitate notice of an FLSA suit to other employees, the plaintiffs must show a 'strong likelihood' that those employees are similarly situated to the plaintiffs themselves"). While Defendants acknowledge that the Fourth Circuit has not addressed this issue, they rely on *Mathews v. USA Today Sports Media Grp., LLC*, a district court within the Fourth Circuit that adopted the *Swales* one-step certification approach in an FLSA misclassification case. 2023 WL 3676795, at *2-3 (E.D. Va. Apr. 14, 2023) (finding the *Lusardi* framework "flawed" and applying the approach in *Swales*).

After review, the Court declines Defendants' invitation to follow *Swales, Clark,* and *Mathews* and to apply a more stringent, one-step approach. Like most federal courts across the country, district courts within the Fourth Circuit – since the *Swales* decision – have "uniformly" followed the approach set forth in *Lusardi*. *See, e.g., Thomas v.*

6

*Maximus, Inc.*, No. 321cv498 (DJN), 2022 WL 1482010, at *4 (E.D. Va. May 10, 2022) (collecting cases and declining to follow *Swales* "in light of the refusal of multiple district courts within the Fourth Circuit to apply *Swales*, and in the absence of guidance from the Supreme Court or the Fourth Circuit on the issue"), *interlocutory appeal of conditional certification denied* C/A No. 22-185 (4th Cir. July 7, 2022); *Staley v. UMAR Servs., Inc.*, 630 F. Supp. 3d 707, 712 (M.D.N.C. 2022) (applying the two-step approach because "it is standard practice among courts in the Fourth Circuit and the Fourth Circuit has not addressed the issue"). Moreover, the Court notes that the *Mathews* decision remains an outlier and has since been rejected by fellow district courts within the Fourth Circuit. *See, e.g., Jones v. Casablanca*, No. 6:22-CV-2307-TMC, 2023 WL 4998570, at *2 (D.S.C. May 24, 2023) (collecting cases rejecting *Swales*, noting that *Mathew* is the *one* exception, and recommending that the district court follow the two-stage approach), *report and recommendation adopted*, No. 6:22-CV-02307-TMC, 2023 WL 4397396 (D.S.C. July 7, 2023); *Hernandez v. KBR Servs., LLC*, No. 3:22-CV-530-HEH, 2023 WL 5181595, at *6 (E.D. Va. Aug. 11, 2023) (agreeing with plaintiffs that *Mathews* "is an extreme outlier," finding "no compelling reason to deviate from twenty years of established precedent," and "apply[ing] the two-stage collective certification process"). Further, since *Mathews*, it appears no other district court within the Fourth Circuit has rejected the two-stage approach in *Lusardi*, and the Fourth Circuit remains silent on this issue. Therefore, given the legal landscape, the Court will adhere to standard practice in this Circuit and will evaluate whether the named Plaintiffs have met their burden pursuant to the more lenient standard set forth in *Lusardi*.

B. **Analysis – "Similarly Situated" Potential Plaintiffs & "Common Policy or Plan"**

Under this standard, a court should conditionally certify a collective action and authorize notice where the proposed class members "share common underlying facts and do not require substantial individualized determinations for each class member." *See Turner v. BFI Waste Servs., LLC*, 268 F. Supp. 3d 831, 835 (D.S.C. 2017) (internal citations and quotation marks omitted). The burden of demonstrating that a plaintiff and putative class members are "similarly situated" is fairly lenient and requires "only a modest factual showing that members of the proposed class are 'victims of a common policy or plan that violated the law.'" *Id.* (internal citations omitted). In evaluating whether a plaintiff has carried its burden, the court evaluates the pleadings and affidavits submitted by a plaintiff. *Amoko*, 577 F. Supp. 3d at 415 (internal citations omitted).

In the instant matter, Plaintiffs allege that they and similarly situated individuals who worked as gauchos and servers at Food Concepts' North Charleston restaurant were required to share tips with an owner and manager in violation of the FLSA and were not paid at least $7.25 an hour. The FLSA allows an employer to pay a tipped employee a reduced hourly wage and utilize a tip credit to meet its FLSA obligations. *See Trejo v. Ryman Hosp. Props., Inc.*, 795 F.3d 442, 447 (4th Cir. 2015). If an employer seeks to use tips to meet its FLSA requirements, it must inform its employees of its use of the tip credit, and the employees must be permitted to retain the tips. 29 U.S.C. § 203(m)(2)(A). Thus, for an employee making $2.13 per hour, the employer can utilize a tip credit of $5.12 per hour to meet its minimum-wage obligations. *See* 29 C.F.R. 531.59(a). The employer may only pool, however, the "tips among employees who customarily and regularly receive tips." 29 U.S.C. § 203(m)(2)(A). In making this determination, the Fourth Circuit looks to

whether the employee "has more than de minimis interaction with the customers in an industry in which undesignated tips are common." *Wai Man Tom v. Hosp. Ventures LLC*, 980 F.3d 1027, 1040 (4th Cir. 2020) (quoting *Montano v. Montrose Rest. Assocs., Inc.*, 800 F.3d 186, 191 (5th Cir. 2015) ("Labels are easily molded to fit a party's goals and cannot be determinative of whether an employee customarily and regularly receives tips.") (internal quotations and citations omitted)). "If a tip pool includes either (1) employees who do not perform customer service functions or (2) managers, then the tip pool is invalid[,] and the employer is not permitted to take a tip credit." *Gregori v. Mkt. St. Mgmt., LLC*, No. CV ELH-16-3853, 2018 WL 4679734, at *5-6 (D. Md. Sept. 28, 2018) (internal quotations and citations omitted) (noting that an employee with some managerial responsibility is not necessarily barred from participating in a tip pool). Moreover, an "employer cannot be a tipped employee," *id.*, and an owner-employer, who also engages in a position that ordinarily receives tips, cannot participate in a tip pool under the FLSA. *Gionfriddo v. Jason Zink, LLC*, 769 F. Supp. 2d 880, 893-94 (D. Md. 2011).

At this stage in the proceedings, the Court's determination is based on whether Plaintiffs have met their burden under the "similarly situated" analysis. In support of their motion, Plaintiffs submitted declarations attesting to the allegations set forth in the complaint regarding their employment at Food Concepts. (*See* ECF Nos. 18-4; 18-5.) Specifically, Plaintiffs attest that they and the proposed class members performed similar job duties, were all paid $2.13 an hour plus tips, were all required to participate in a mandatory collective tip pool, and were all required to share their tips with Conte, an owner and manager. Specifically, Richardson attests that, "[o]n several occasions[,] [she] heard Mr. Conte introduce himself to customers as the owner," and she "know[s] first-

9

hand that Mr. Conte hired several Gauchos." (ECF No. 18-5 ¶¶ 10, 13.) She further attests that, when she was working as assistant manager, she "was required to get Mr. Conte's permission for even minor tasks," like whether she could remove a picture that kept falling off the wall or add new shelves in the wine closet and rearrange the bottles by date. (*Id.* ¶¶ 14-16.) In that same vein, Timothy attests that he, too, "on several occasions" heard Conte "introduce himself to customers as the owner," and that Conte "worked in the office" and "directed employes' work." (ECF No. 18-4 ¶¶ 9, 11-12.) He further attests that he "was required to ask Mr. Conte if the customers could use more than one Groupon." (*Id.* ¶ 13.) Both Plaintiffs attest that they and the other servers and gauchos were required to participate in a tip pool and were required to share their tips with Conte. (*Id.* ¶ 15; ECF No. 18-5 ¶¶ 17-18.) Richardson further attests that, when she was working as the assistant manager, she "was responsible for collecting he total amount of tips earned during the shift and dividing the tips evenly between the [s]ervers, [g]auchos and Mr. Conte." (ECF No. 18-5 ¶ 20.)

The FLSA does not define the terms "similarly situated" for purposes of determining collective action membership. The Supreme Court and the United States Court of Appeals for the Fourth Circuit also have not announced a test to determine whether individuals are "similarly situated." Several circuit courts of appeal recently have addressed comprehensively a standard for determining whether employees are "similarly situated" for purposes of an FLSA collective action. For example, the Second Circuit held that "to be 'similarly situated' means that named plaintiffs and opt-in plaintiffs are alike with regard to some material aspect of their litigation." *Scott v. Chipotle Mexican Grill, Inc.*, 954 F.3d 502, 516 (2d Cir. 2020). "That is, party plaintiffs are similarly situated, and may proceed

in a collective, to the extent they share a similar issue of law or fact material to the disposition of their FLSA claims." *Id.* Likewise, the Ninth Circuit has held that "plaintiffs are similarly situated, and may proceed in a collective, to the extent they share a similar issue of law or fact material to the disposition of their FLSA claims." *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1117 (9th Cir. 2018); *see also O'Brien v. Ed Donnelly Enterprises, Inc.*, 575 F.3d 567, 584-85 (6th Cir. 2009) ("[P]laintiffs were similarly situated, because their claims were unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct."). District courts within the Fourth Circuit have used a test adopted originally from a FLSA treatise, whereby "plaintiffs must raise a similar legal issue as to coverage, exemption, or nonpayment or minimum wages or overtime arising from at least a manageably similar factual setting with respect to their job requirements and pay provisions, but their situations need not be identical." *De Luna-Guerrero v. N. Carolina Grower's Ass'n, Inc.*, 338 F. Supp. 2d 649, 654 (E.D.N.C. 2004) (quoting Kearns, The Fair Labor Standards Act, § 18.IV.D.3). *See, e.g., Tom v. Hosp. Ventures LLC*, No. 5:17-CV-98-FL, 2021 WL 2272386, at *5 (E.D.N.C. June 3, 2021); *Burgess v. Cherokee Cnty. Sch. Dist.*, No. 7:19-CV-02704-JD, 2021 WL 11747929, at *3 (D.S.C. July 20, 2021).

Here, the Court finds that, through their declarations, Plaintiffs have made a "modest factual showing" that proposed opt-in plaintiffs are "similarly situated" under any of the foregoing definitions. They all worked for Food Concepts at its North Charleston restaurant; they all worked as gauchos or servers within that same restaurant that required them to participate in the restaurant's allegedly illegal mandatory tip pool and were not paid at least $7.25 an hour; they all share a similar time of employment, under

the same manager and owner; and, lastly, because all of these employees were subject to the same tip pool policy, they raise similar core issues of fact and law material to the disposition of their FLSA claims. *Visco v. Aiken Cnty., S.C.*, 974 F. Supp. 2d 908, 915 (D.S.C. 2013) ("To demonstrate that other potential plaintiffs are similarly situated to him, a plaintiff must make only a modest factual showing sufficient to demonstrate that he and potential plaintiffs together were victims of a common policy or plan that violated the law."); *Curtis v. Time Warner Entm't–Advance/Newhouse P'ship*, No. 12–2370, 2013 WL 1874848, *2 (D.S.C. May 3, 2013) ("The plaintiff bears a low standard of proof at this [first] stage because the district court is simply determining whether similarly situated plaintiffs do in fact exist.") (quotation marks and alterations omitted).

Defendants argue that the Court should deny Plaintiffs' request for conditional certification because Plaintiffs' declarations are not credible and because Defendants submitted declarations to contradict Plaintiffs' assertions. (ECF No. 22 at 11-12.) For example, Defendants submitted Conte's declaration wherein he attests that he never served as a manager at the restaurant during his employment, which he states began in December 2020, and that he did not become an owner of Food Concepts until "on or about May 31, 2022." (ECF No. 22-1 ¶¶ 2, 7, 11.) He further attests that, prior to becoming an owner, he worked as a gaucho, and he participated in a tip pool, "under which the total tips earned by the Servers and Gauchos were split equally between each of them in a given shift." (*Id.* ¶¶ 6, 12.) However, he attests that when he became an owner, he stopped participating in the tip pool, even though he continued working as a gaucho. (*Id.* ¶¶ 13, 17.) According to Conte, Sherrie Hughes was the General Manager when he was hired and after he became an owner, and then when Hughes stepped down, Ana Maria Dias

12

assumed the role of General Manager. (*Id.* ¶¶ 8, 9, 16.) Conte's latter attestation is also attested to by Hughes and Dias in their declarations, which Defendants also submitted to the Court. (*See* ECF No. 22-3 and 22-3.)

The Court finds it is not appropriate to deny conditional certification on the bases asserted by Defendants because "credibility determinations are usually inappropriate for the question of conditional certification." *Essame v. SSC Laurel Operating Co., LLC*, 847 F. Supp. 2d 821, 825 (D. Md. 2012) (citing *Colozzi v. St. Joseph's Hosp. Health Ctr.*, 595 F. Supp. 2d 200, 205 (N.D.N.Y. 2009)). Indeed, "[t]he fact that [Plaintiffs'] allegations are disputed by . . . [D]efendants does not mean that [P]laintiffs have failed to establish a colorable basis for their claim that a class of similarly situated plaintiffs exist[s]." *Quinteros v. Sparkle Cleaning, Inc.*, 532 F. Supp. 2d 762, 772 (D. Md. 2008). *See also Essame*, 847 F. Supp. 2d at 825 (noting that "the court does not . . . resolve factual disputes" at the conditional certification stage) (internal quotations and citations omitted*); Beasley v. Custom Commc'ns, Inc*, No. 5:15-CV-583-F, 2016 WL 5468255, at *1 n.7 (E.D.N.C. Sept. 28, 2016) ("For conditional certification purposes, the court does not consider any discrepancies between Plaintiffs' declarations and Defendant's declaration"); *Hart v. Barbeque Integrated, Inc.*, 299 F. Supp. 3d 762, 771 (D.S.C. 2017) (noting that while the defendant produced a number of declarations calling into question the plaintiff's claims, the plaintiff established a reasonable basis for her claim that other similarly situated individuals existed). Moreover, while critical factual disputes exist, the Court notes that not all of Plaintiffs' allegations are disputed. In his declaration, Conte confirms that Food Concepts required servers and gauchos to participate in a tip pool, admits that he

13

participated in this tip pool for a period of his employment, and admits that he became an owner of Food Concepts during Plaintiffs' employment. (*See* ECF No. 22-1.)

Accordingly, the Court finds that Plaintiffs have met the "fairly lenient" collective action standard here. Under the circumstances of this case, it would not promote efficiencies for either the court or litigants to require any putative collective action members to proceed in a separate action. Therefore, the Court in its discretion grants Plaintiffs' motion for conditional certification pursuant to § 216(b).

### C. Plaintiffs' Proposed Notices and Requests

A collective action notice is intended to give potential opt-in plaintiffs "accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Hoffman-LaRoche*, 493 U.S. at 170. The court may approve a notice that is "timely, accurate, and informative." *Id*. at 172. It has "broad discretion regarding the details of the notice sent to potential opt-in plaintiffs." *Regan v. City of Charleston*, No. 2:13-cv-3046, 2014 WL 3530135, at *7 (D.S.C. July 16, 2014). "[W]hen exercising its broad discretion to craft appropriate notices in individual cases, District Courts should consider the overarching policies of the FLSA's collective suit provisions." *Id*. These policies "require that the proposed notice provide accurate and timely notice concerning the pendency of the collective action, so that potential plaintiffs can make informed decisions about whether to participate." *Id.* (quoting *Butler v. Direct SAT USA, LLC*, 876 F. Supp. 2d 560, 574 (D. Md. 2012)).

"'Absent reasonable objections by either the defendant or the Court, plaintiffs should be allowed to use the language of their choice in drafting the notice.'" *Amoko v. N&C Claims Serv., Inc.,* 577 F. Supp. 3d 408, 416 (D.S.C. 2021) (quoting *Hose v. Henry*

14

*Indus., Inc.*, 49 F. Supp. 3d 906, 919 (D. Kan. 2014), *order clarified by* No. 13-2490, 2014 WL 5510927 (D. Kan. Oct. 31, 2014).

As part of their motion, Plaintiffs seek to have the Court approve the proposed notices attached to their motion as Exhibit "A" and "B," and approve the dissemination of same via mail and email (Exhibit A) and text message (Exhibit B). (ECF No. 18 at 2.) Additionally, Plaintiffs seek an order for production of the names, phone numbers, and emails for all potential class members; for approval for putative collective members to opt-in via an electronic signature; and for approval of a sixty-day opt-in period. (*Id.*)

In response, Defendants do not raise objections to Plaintiffs' proposed methods of distribution, request for production, request for opts-in to use electronic signatures, or request for a sixty-day opt-in period. Accordingly, the Court approves notice via mail, email, and text message, as it finds that notice via email and text message "is appropriate in today's mobile society," and the Court "approves receiving responses back from potential opt-in plaintiffs using a secure E-signature program, such as DocuSign." *Graham v. Hall's S. Kitchens, LLC*, 331 F.R.D. 619, 622 (D.S.C. 2018). *See also Njoroge v. PrimaCare Partners, LLC*, No. CV 22-0425-BAH, 2022 WL 4465894, at *7 (D. Md. Sept. 26, 2022) (permitting notice by text message in addition to U.S. mail and email). Further, the Court authorizes a sixty-day opt-in period. *See Regan v. City of Charleston*, S.C., No. 2:13-cv-3046, 2014 WL 3530135, at *10 (D.S.C. July 16, 2014) ("[D]istrict courts in the Fourth Circuit regularly authorize opt-in periods between thirty and sixty days."). Lastly, for purposes of dissemination of the notice, the Court directs Defendants to produce putative collective members' full names, phone numbers, and email address (including last known numbers and emails if no longer employed). This information must be provided

to Plaintiffs' counsel in an electronic spreadsheet format within 15 days of the Court's approval of the revised notices.

Defendants do raise one overbroad concern with the class definition contained in the proposed notices.[2] (ECF No. 22 at 12.) In their reply, Plaintiffs ask that the Court let the parties confer on this remaining issue to present the Court with agreed-upon notices. (ECF No. 29 at 9.) As set forth in detail below, the Court directs the parties to so confer.

## **CONCLUSION**

Based on the foregoing, the Court grants Plaintiffs' motion for condition certification. (ECF No. 18.) The Court directs the parties to meet and confer regarding the language of the proposed class, and to file with the Court for final approval, within 14 days of the date of this order, joint notices with proposed revised language for the proposed class but otherwise in accordance with the above rulings. If the parties are unable to come to an agreement on the language of the proposed class, the parties shall set out their respective positions and proposed notices in a joint filing, to be filed with the Court within 14 days of the date of this order. Thereupon, the Court will enter a further order approving the notices to be disseminated.

**IT IS SO ORDERED.**

 /s/ Bruce Howe Hendricks
United States District Judge

February 13, 2024
Charleston, South Carolina

---

[2] The Court notes that, due to the passage of time, Defendants' other concern based on the three-year lookback appears moot. (*See* ECF No. 22 at 11-12 (arguing that the notice is overbroad as it may include individuals who worked prior to the start of Conte's employment with Food Concepts in December 2000)).

16